# Cumberland Valley Railroad Company *versus* Rhoadarmer et al.

A railroad company having constructed a track along a public highway in a borough, the owners of property abutting thereon filed a petition for the appointment of viewers to assess damages under the Act of February 19th, 1849, § 11 (Purd. Dig. 1219), which Act provides for the appointment of such viewers when either land is taken or damages are sustained "by reason of any excavation or embankment made in the construction of the road." The petition simply alleged that the railroad company "has recently constructed and laid down an additional track . . . . . and has thereby so occupied and obstructed the said street in front of the lands of your petitioners as to cause great damage and inconvenience," etc. Viewers were appointed, who found that "no land of the complainants had been taken, but that the railroad company had constructed an additional track in front of the lands of the petitioners," which "obstructs the approach to said lands." They further awarded damages to the petitioners, and this report, upon exceptions thereto, was confirmed by the court.

On certiorari, *Held,* that neither the allegations of the petition nor the findings of the viewers were sufficient to bring the proceedings within the Act of 1849; that the proceedings thereunder were therefore irregular and void, and as such should be set aside.

June 11th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to and appeal from the Court of Common Pleas of *Franklin county :* Of May Term, 1884, No. 14.

This was a certiorari sur appeal taken by the Cumberland Valley Railroad Company to the action of the said court in

[Railroad Co. v. Rhoadarmer.]

dismissing the said company's exceptions to the report of viewers, appointed under the Act of February 19th, 1849, § 11 (Purd. Dig. 1219), on the petition of Jere Rhoadarmer et al. to assess damages for the obstruction by said railroad of a street in front of property belonging to the petitioners. The petition alleged "that the Cumberland Valley Railroad Company has recently constructed and laid down an additional track of railway upon the line of Third street, in the borough of Chambersburg, in said county, and has thereby so occupied and obstructed the said street in the front of the lands of your petitioners, as to cause great damage and inconvenience to your petitioners, as the owners in fee simple of said lands."

The court granted the prayer of the petition, and filed an order by which, after substantially reciting the language of the petition, seven viewers were appointed "to estimate and determine the quantity, quality and value of any land taken and occupied and inconveniences caused . . . . . in consequence of the construction and laying down of said additional track of railway, and to report the amount of damages sustained by the petitioners.

The viewers reported "that no land of the complainants has been taken, but that the Cumberland Valley Railroad Company has constructed an additional and third track for the purpose of a siding," in front of the lands of the petitioners, and that the same "obstructs the approach to said lands." As compensation therefor, they awarded the petitioners the sum of $250.

The Cumberland Valley R. R. Co. thereupon filed exceptions to said report on the ground that the proceedings were without warrant of law, for the reason that neither the petition alleged nor the report of the viewers found that (1) land had been actually taken; or (2) that the petitioners had been injured by the construction of any embankment or excavation; that as neither of these facts was alleged or found, this proceeding, under the Act of February 19th, 1849, was unauthorized and void.

This exception was dismissed by the court, and the report confirmed, Rowe, P. J., filing the following opinion:

I am of opinion that the case falls within the purview of the Act of 1849; that the exceptions must be overruled, and the report be confirmed. The case relied upon by Mr. Stewart is Snyder v. The Pennsylvania Railroad Company, 5 P. F. S. 344. But our case is clearly distinguishable. In that case the petition alleged no more than that the railroad company, in the construction of their track, "have occupied the pavement and public street in front of said property." It was held that the mere occupancy of a street by a railroad com-

pany (without more) is not an injury to one owning a lot fronting on street, which would be remedial at common law, and therefore not within the Act. But our case is different. In the first place, the case is within the terms of the Act of 1849. The petition in substance and effect alleges an "embankment or excavation." I take it that those words need not be used, but that it is sufficient if the language used imports either, and that this is the *grievance* of the complaint. Now the *obstruction* of a street in front of one's property by laying a railroad track thereon must be either by filling up or cutting down. In the second place, it is within the provision of the Act if not within its express words. It is within the whole extent of its intentions. The Act has received a liberal construction. The 10th section has reference only to the entry upon and taking possession of land or materials, and the making of fillings or excavations on streets. And the constitution of 1838 only required compensation to be made for land actually *taken*, not for property injured. And the 11th section directed the viewers to estimate and determine "the quantity, quality and value of said lands so taken." But the construction was that the viewers were to consider all the damages which cause the direct and immediate *consequence* of the construction of the railroad. And in the case of a similar statute, though the words did not embrace a corporation, yet the law was held to include a corporation as within its reason and spirit, "as clearly within the equity of it:" 4 Rawle 22. Lord COKE says, "Equitie is a construction made by the judge, that cases out of the letter of a statute, yet being within the same mischief or cause of the making of the same, should be within the same remedy that the statute provideth; and the reason hereof is for that the lawgivers could not possibly set down all cases in express terms." Speaking of a statute of this kind, Chief Justice GIBSON says in Lehigh Bridge Co. *v.* Lehigh Coal Co., 4 Rawle 23, "The legislature evidently meant to provide for nothing that was not remedial at common law; and on the other hand it was intended that *every common law injury* should be redressed by the statutory remedy." And adds "so that, taking an artificial person not to be within the letter of the Act, it is clearly within the equity of it, and the statutory provision being remedial, is to be extended to cases in equal mischief." This view has been adopted in subsequent cases, and applied to the Act of 1849: Zimmerman *v.* The Union Canal Company, 1 W. & S. 352; Watson *v.* The P. & C. Railroad Co., 1 Wright 480; Schuylkill Nav. Co. *v.* Loose, 7 Harris 15, 18; Snyder *v.* Railroad Co. 5 P. F. S. 343. Now that an obstruction of a street in front of one's house, by the laying of a railroad track, is an injury remediable at common

law, is clear: See Beckett v. The Midland Railway Company, Law Reports, 3 C. P. 83, 92, 94, 97.

It seems, then, that without reference to the new constitution, the petition is good. The law of 1849 went much further than the constitution of 1838: 6 W. & S. 115. The constitution stopped with private property *taken.* Indirect and consequential injuries, acts tending to depreciate the value, matters of mere annoyance, were outside of this position. But the legislature, *as the price of the franchise,* often required these to be considered, as well as the property taken. And as we have seen, the Act of 1849 was construed under the former constitution as embracing all injuries which the common law recognizes as fit subjects for compensation: Watson v. R. R. Co. 1 Wright 479. Moreover the Act of 1849 was certainly intended to be as broad as the constitutional provision, at least, and consequently to provide for every case of the "*taking* of private property for public use." Now " property cannot be regarded, in respect of its value, as a thing standing abstracted of ownership, but must be regarded in a practical relation, as being a sort of extension of the power of the owner:" See WILLES, J. in Beckett v. Midland Railway Co., L. R. 3 C. P. 93. And therefore that which takes away *the value* of the property is taking away the property itself, and Mr. Pierce, in his work on railroads, says, " While the laying of a road on a highway without any peculiar or direct injury to the landowner is not a taking of his property, changes in its surface and erections which destroy or materially *obstruct* his access to and use of it, and cause him special damage, may be treated *as such taking ;* " and this, he says, is the result of many well-considered authorities: Pierce on Railroads 241. He adds that "Exposure to noise and smoke are, however, not a taking of private property, nor are such injuries actionable." Since the Acts of Assembly provided compensation for property taken, injured or destroyed, in the exercise of the power of eminent domain by railroads, wherever the owner might have had damages at common law, I do not see that the new constitution is wider in its scope than these Acts. For property "injured" is by some act which "injuriously affects" the landowner. But those are held in England to be such as the common law would give damages for, and only such: See Beckett v. Railway Co., supra. It was not found necessary to call in the aid of Sec. 8, Art. 16, of the Constitution of 1874, in City of Reading v. Althouse, 12 Norris 404, but was found necessary in Pusey v. City of Allegheny, 2 Out. 522. These were not railroad cases, nor under the Act of 1849, but cases of municipal corporations. But if the constitution does give

compensation for injury to property not covered by the Act of 1849, while the party injured would be entitled to *damages*, he would not seem to be entitled to the procedure of the Act of 1849. Thus if exposure to noise and smoke from locomotives is not an actionable injury (as it is held to be in Brand *v.* Hammersmith and City Railway Co., L. R. 2 Q. B. 223, by the Exchequer Chamber, reviewing the Court of Q. B. and itself taken to the House of Lords), then the Act of 1849 is not applicable, though it should be held an injury within the meaning of the constitution. It seems to me that where a railroad company lays its track in the street so as to cause an obstruction of access to one's property, the landowner is entitled to damages, because (1) it is an injury special and peculiar to him and not common to all the public; (2) it is one for which he might have maintained an action at common law; (3) it is an injury to his *estate ;* (4) one sustained in respect of the property itself, not of any particular use of it, and that his, damages are to be assessed under the Act of 1849.

The Cumberland Valley Railroad Company took this certiorari and appeal assigning as error the action of the court in dismissing its exception and confirming the report.

*John Stewart*, for the appellant.—It was essential to this proceeding that the petition should contain a distinct averment that the petitioners' lots had been damaged in the manner indicated by the Act of 1849; upon this averment depended the jurisdiction of the court: O'Hara *v.* R. R. Co., 1 Casey 448; Reitenbaugh *v.* R. R. Co., 9 Harris 104; Zack *v.* R. R. Co., 1 Casey 396. The simple averment of an obstruction of the street does not meet the requirements of the Act, for the Act is not intended to give a remedy against every obstruction of a street by a railroad, but only against such as result in an actual taking of land or in an injury to property owners arising from excavations and embankments. If the railroad ran at grade, it could obstruct the street without either taking land or making an excavation or embankment, and in that event there could be no remedy under the Act of 1849, which "cannot be carried by intendment beyond the purpose it expressed. No remedies in statutory form can be asserted and no remedies at common law can be defeated by implication from its terms :" New Castle and Franklin R. R. Co. *v.* M'Chesney, 4 Norris 526. The petition in this case was therefore fatally defective and the court should have sustained our exception that the "proceeding was without warrant of law."

*George Chambers* and *Duncan & McGowan,* for the appel-lees.—It was not necessary for us to set forth in our petition the exact language of the Act of 1849. It was sufficient for us to substantially allege that we had sustained an injury which that Act was designed to remedy. That the Act of 1849 was enacted to meet cases such as this we think is clear, even though its language be strictly construed. But as it is a remedial statute, designed as a protection to the rights of the public, it should be liberally construed. So interpreted, the construction of this track, which prevented or obstructed access to our property, was not merely a "taking" of land but it was necessarily a construction either of an embankment or an excavation. As we are clearly within the mischief which the Act of 1849 was designed to prevent, we should likewise be within its remedy.

Mr. Justice GREEN delivered the opinion of the court, October 6th, 1884.

This case comes before us on exceptions to a report of viewers of railroad damages in the court below, and on appeal from the decision of the court dismissing the exceptions. Nothing is brought up but the record, which consists of the petition, the order to viewers and the report, with the exceptions thereto and the judgment of the court. There are no deposi-tions and if there were they could not be regarded. The whole case is spread upon the papers and we can consider no allegations outside of them. As set out in the petition, the plaintiff's claim is for damages for constructing and laying down an additional track in Third street in the borough of Chambersburg, and thereby so occupying and obstructing the said street in front of the lands of the petitioners, as to occasion damage and inconvenience to the owners. The lands are there described as fronting on the street. There is no allega-tion of any attempt to settle the damages by agreement, but the appointment of viewers is asked to assess the damages if any and make report. The order to viewers recites the petition and appointment of viewers, and directs the latter to view the premises, estimate and determine the quantity, quality and value of land taken, ascertain the damages and report the same to the court in the usual manner in such cases. The report sets out that no land of the petitioners has been taken or occupied, but that the railroad company has constructed an additional and third track, for the purpose of a siding, on Third street, which third track passes along a portion of the lot of the petitioners, as indicated on an an-nexed draft, and obstructs the approach of said lands, and concludes by assessing the damages resulting or likely to result

to the petitioners " in consequence of the making of the said additional track of railway, and of the construction of works in connection therewith," at two hundred and fifty dollars. This is the entire case of the petitioners as it appears upon the record before us.   The proceeding is under the general railroad Act of 1849.

It affirmatively appears by the report that no land of the petitioners has been taken or occupied, and hence the case does not come within that clause of the Act which gives damages for land taken.   The only other part of the Act under which the proceeding can be sustained, if at all, is the third proviso of the 10th section which is in the following words :   " That whenever any company shall locate its road in and upon any street or alley, in any city or borough, ample compensation shall be made to the owners of lots fronting upon such street or alley, for any damages they may sustain, by reason of any excavation or embankment made in the construction of such road, to be ascertained as other damages are authorized to be ascertained by this Act."   There is no difficulty in the interpretation of this language.   It authorizes a recovery of damages if any excavation has been made, or any embankment, in the street or alley fronting the petitioner's land, and damage has resulted therefrom.   In the present case it is neither alleged in the petition, nor found by the report, that there is either an excavation or an embankment, in the street where the additional track is laid.   The report says the track obstructs the approach to the petitioners' lands, but it does not say the obstruction is by means of an embankment or excavation, and unless that is the form of the obstruction the Act does not apply.   Very many persons regard any railroad track, especially a steam railroad, upon the street in front of their property as an obstruction to the approach whether the track be laid on the grade, or above it, or below it.   We have no means of knowing whether the viewers in this case so regarded it or not, nor is it necessary we should.   If there was an embankment or an excavation in the street, in front of the land of these petitioners, it was very easy to say so. The court can not infer it, and it is altogether unfair to a judicial tribunal to compel it to infer a cause of action when it is so very simple and easy a matter to allege and prove it, if it really exists.   We are at a loss to understand why these proceedings are deficient in this respect.   The papers appear to be carefully drawn, the Act is specific in designating the very thing for which damages may be given, and yet nowhere in this record is there an averment which brings the case within the terms of the Act.   An obstruction by a track laid on the grade is not a cause for which damages may be

awarded, under the Act of 1849 and no decision to that effect has ever been rendered by this court. On the contrary, so far as our utterances have gone on that subject, they are directly against such a right. Thus in Newcastle and Franklin Railroad Company v. McChesney, 4 Nor. 526, Mr. Justice WOODWARD in delivering the opinion of the court said : "It was for mischiefs arising from an excavation or embankment within the boundaries of a public highway, by which the value of private property would be impaired, that the legislature intended to provide. The Act of 1849 cannot be carried by intendment beyond the purpose it expressed. No remedies in statutory form can be asserted, and no remedies at common law can be defeated by implication from its terms." And again on page 527. "The subject matter of legitimate inquiry was the extent of the damage caused to the plaintiffs, by the embankment made by the defendant in Mill street. The liability of a railroad company was expressely limited to cases in which an 'excavation' or an 'embankment' should be made in the course of the 'construction of their road.' If the track had conformed to the grade line of the street, the plaintiffs would have had no remedy at all, for the statute would have had no application." We see no reason for departing from these views, but consider them entirely sound. It is not for the courts to make statutory law. That is the exclusive province of the legislature.

> The decree of the court below is reversed and the petition and all proceedings thereunder are dismissed and set aside at the cost of the petitioners.